UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PASQUALE J. MORGANTI,

     Petitioner,

v.                            Case No. 2:21-cv-546-JES-KCD

SECRETARY, DEPARTMENT OF
CORRECTIONS,

     Respondent.

_____

## OPINION AND ORDER

Pasquale J. Morganti ("Morganti" or "Petitioner"), a prisoner in the custody of the Florida Department of Corrections, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). The Secretary of the Florida Department of Corrections ("Respondent") filed a response in opposition to the petition. (Doc. 7). Petitioner filed a reply (Doc. 8), and the petition is ripe for review.

After carefully reviewing the pleadings and the entire state-court record, the Court concludes that Petitioner is not entitled to federal habeas corpus relief on any ground raised in this petition. Further, because the Court was able to resolve each ground on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## I.    Background

On  January  30,  2013,  Morganti  was  charged  by  amended information  with  burglary,  in  violation  of  Florida  Statute  §§ 810.02  and  777.011  (count  one)  and  grand  theft,  in  violation  of Florida  Statute  §§  812.014(1),  812.014(2)  and  777.011.  (Doc.  7-2 at  15).  A  jury  found  Morganti  guilty  as  charged.  (Id.  at  879). The  trial  court  sentenced  Morganti  to  concurrent  terms  of  fifteen years  in  prison  on  count  one  and  five  years  in  prison  on  count two.  (Id.  at  881–92).  Florida's  Second  District  Court  of  Appeal ("Second  DCA")  affirmed  Morganti's  convictions  and  sentences  per curiam  without  a  written  opinion.  Morganti  v.  State,  173  So.  3d 976  (Fla.  2d  DCA  2015).

On  July  6,  2015,  Morganti  filed  a  state  petition  for  writ  of habeas  corpus  alleging  ineffective  assistance  of  appellate counsel.  (Doc.  7-2  at  964).  The  Second  DCA  denied  the  petition without  a  written  opinion.  (Id.  at  979);  Morganti  v.  State,  208 So.  3d  84  (2015).

Thereafter,  Morganti  filed  a  motion  and  an  amended  motion  for postconviction  relief  under  Rule  3.850  of  the  Florida  Rules  of Criminal  Procedure  (collectively,  "Rule  3.850  Motion").  (Doc.  7-2  at  991,  1044).  The  postconviction  court  ordered  an  evidentiary hearing  on  two  of  the  ten  claims  raised  in  the  Rule  3.850  Motion. (Id.  at  1352).  Following  the  hearing,  the  postconviction  denied all  claims.  (Id.  at  1358–1468,  1470).  The  Second  DC  affirmed  per

2

curiam without a written opinion. <u>Morganti v. State</u>, 313 So. 3d 593 (Fla. 2d DCA 2021).

Morganti signed this federal habeas petition on July 13, 2021.[1]   (Doc. 1 at 31).

## II.   Legal Standards

### A.   The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  In this context, clearly established federal law consists of the governing legal principles, and not the <u>dicta</u>, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision.  <u>White v. Woodall</u>, 572 U.S. 415, 420 (2014); <u>Carey v. Musladin</u>, 549 U.S. 70,

---

[1] Under the "mailbox rule," a pleading is considered filed by an inmate on the date it was delivered to prison authorities for mailing, which—absent contrary evidence—is the date it was signed. <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001).

74 (2006) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court either:  (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  <u>Ward v. Hall</u>, 592 F.3d 1144, 1155 (11th Cir. 2010); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003).

A state court decision involves an unreasonable application of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown v. Payton</u>, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000) (quoting <u>Williams</u>, 529 U.S. at 406).

The  standard to obtain relief under 28 U.S.C. §2254(d) is both mandatory and difficult to meet.  To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  <u>White</u>, 572 U.S. at 420 (quoting  <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)).

Moreover, when reviewing a claim under section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits—warranting deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion.  See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).  However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance.  Sellers, 138 S. Ct. at 1196.

## B.  Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  466 U.S. 668, 687-88 (1984).  A

petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  Id.  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt v. Titlow, 571 U.S. 12, 15 (2013).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms."  Id. at 688. In reviewing counsel's performance, a court must presume that "counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689 (citation omitted).  A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny.  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  Proving Strickland prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  466 U.S. at 687.

## C.  Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b)(1).  Exhaustion of state remedies requires that the

6

state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]"  <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. <u>Snowden v. Singletary</u>, 135 F.3d 732 (11th Cir. 1998).  Under the similar doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  <u>Martinez v. Ryan</u>, 566 U.S. 1, 9 (2012).

A petitioner can avoid the application of the exhaustion or procedural default rules by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation.  <u>Spencer v. Sec'y, Dep't of Corr.</u>, 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, a petitioner must demonstrate a reasonable probability the outcome of the proceeding would have differed.  <u>Crawford v. Head</u>, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986).

### III. Discussion

This case involves the burglary of a Collier County home and the theft of two safes (containing two firearms). On May 24, 2012, police were surveilling a home at 217 Benson Street in Naples, Florida because they believed a stolen iPad (from a different burglary) was at the house. (Doc. 7-2 at 21, 402).[2] While watching the Benson Street house, the police saw Morganti and his half-brother, Randy Redford ("Redford"), drive up in a red Saturn and remove two safes from the back seat of their car. (Id. at 401-03). Morganti and Redford left the house about an hour later. (Id. at 403). When the police searched the Benson Street house about a half hour after Morganti and Redford left, they found two safes and some firearms in the garage, and papers smoldering on a grill behind the home. (Id. at 424-25, 430, 439, 441-43, 448). Later, the police determined that the safes and the

---

[22] A different burglary had occurred in Lee County, and the Lee County Sheriff's Office requested assistance from Collier County after they tracked a stolen iPad with its GPS device to the Benson Street address. (Doc. 7-2 at 21).

paperwork belonged to Thomas Suthers, who testified at trial that the firearms and papers had been stored in the safes at his home in Naples, Florida.  (Id. at 588–92).  Morganti and Redford were charged with burglary and grand theft and tried jointly.

Morganti raises a total of nine claims in his habeas petition, which includes an attached memorandum.  However, he labels different grounds as "Claim One" in the pre-printed 28 U.S.C. § 2254 form and the attached memorandum.  The Court will attempt to adhere to Morganti's numbering system by labeling the second "Claim One" as "Ground One(a)" and addressing it as the second claim.

As discussed infra, Ground One is unexhausted.  Nevertheless, the Court briefly addresses the merits of this claim as an alternative means of disposition.  See 28 U.S.C § 2254(B)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Morganti raised the remaining claims on direct appeal, in a state habeas petition, or in his Rule 3.850 Motion, and these claims are exhausted for federal habeas review.  The Second DCA provided no explanation for its rejection of the claims raised on direct appeal or in the state habeas petition.  But "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."

Harrington, 562 U.S. at 98.  As for the grounds denied by the postconviction court with a reasoned opinion and affirmed by the Second DCA without a written opinion—the Court will look through the Second DCA's unreasoned opinion and presume that the affirmance rested upon the reasons given by the postconviction court. Sellers, 138 S. Ct. at 1192.

**A.   Ground One**

Morganti asserts that the trial court erred when it failed to grant his motion for a judgment of acquittal ("JOA").  He asserts that:

> No evidence towards me presented in trial other than giving codefendant a ride to a friends of his home. After he already found property in dumpster placed them in my car, then went to my motel room woke me up and asked me for a ride a friend's house.  I had no idea the safes were stolen.  No evidence in trial I touched the safes.

(Doc. 1 at 4).  Although Morganti raised a JOA claim at trial and on direct appeal, Respondent argues that this ground is unexhausted for federal habeas review because Morganti did not present the federal nature of this claim to the state courts. (Doc. 7 at 12–15).  Rather, in his appellate brief, Morganti "argued that the state trial court erred in failing to grant a judgment of acquittal based upon insufficient evidence under Florida's circumstantial evidence standard."  (Id. at 14).  Respondent notes that "[i]n the eleven pages of written argument, [Morganti] focused exclusively on Florida Statutes, Florida case law, and the Florida

standard jury instructions.  At no point did [Morganti] mention a federal constitutional right or cite any federal authority." (Id.)

A review of Morganti's appellate brief supports Respondent's argument.  Morganti argued on direct appeal that "[t]he prosecution had no direct evidence to tie [him] to the burglary and theft of property from the burgled house and relied upon circumstantial evidence to tie him to these crimes."  (Doc. 7-2 at 914).  Quoting state court opinions, Morganti complained that, while the evidence against him may have been sufficient to create a suspicion as to his guilt,"[i]t is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict . . . Even though the circumstantial evidence is sufficient to suggest a probability of guilt, it is not thereby adequate to support a conviction if it is likewise consistent with a reasonable hypothesis of innocence." (Doc. 7-2 at 924-95).  In other words, Morganti's argument on direct appeal was that all evidence supporting the charges against him was circumstantial and could not sustain his convictions under Florida law.[3]  Therefore, this is purely a state-law claim.

---

[3] In Florida, a "special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence," or "predicated chiefly upon circumstantial evidence." Thorp v. State, 777 So. 2d 385, 389 (Fla. 2000) (quotation omitted).  "Where the only proof of guilt

It is not enough that Morganti asserted the factual substance of this claim in state court.  The Supreme Court has made clear that a prisoner does not exhaust federal claims merely by raising similar state claims.  Picard v. Conner, 404 U.S. 270, 277-78 (1971).  Moreover, the "reasonable hypothesis of innocence" legal standard relied upon by Morganti in his brief on direct appeal and this section 2254 petition is peculiar to Florida law, and claims based upon a state court's interpretation of state law are not cognizable on federal habeas review.  See e.g., Holsey v. Thompson, 462 F. App'x 915, 917 (11th Cir. 2012) (recognizing that a challenge to the sufficiency of the evidence based on Georgia law was not cognizable on habeas review).  Additionally, the federal sufficiency-of-the-evidence standard does not require that cases turning on circumstantial evidence exclude every reasonable hypothesis of innocence.  Preston v. Sec'y, Florida Dept. of Corr., 785 F.3d 449, 463-64 (11th Cir. 2015).

Morganti offers no cause for not raising the federal aspect of Ground One in state court and as discussed below, no fundamental miscarriage of justice will result from its default because he

---

is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." Id. (quotation omitted); Lowe v. State, 90 Fla. 255, 105 So. 829, 830 (1925) (requiring that the evidence be "irreconcilable with any reasonable theory of [the defendant's] innocence and exclude to a moral certainty every hypothesis but that of his guilt").

would not be entitled to relief under the federal standard. Therefore, Morganti did not exhaust his federal claim in the state courts, and he is procedurally barred from raising his non-exhausted federal claim in this federal habeas petition.

Finally, even had Morganti exhausted the federal aspect of Ground One, he is not entitled to habeas relief.  The federal sufficiency-of-the-evidence standard is set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  Under <u>Jackson</u>, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Id.</u> at 319 (emphasis in original).  Under Florida law, to prove the crime of burglary, the state was required to prove that Morganti:  (1) entered a structure owned by the victim; and (2) at time of entering the structure had the intent to commit a crime (other than burglary or trespassing) in that structure. Fla. Stat. § 810.02, Fla. Std. Jury Instr. (Crim) 13.1.  To prove theft, the state was required to prove that Morganti:  (1) knowingly and unlawfully obtained or used or endeavored to obtain or use the property of the victim; and (2) did so with the intent to either permanently or temporarily deprive the victim of the property.  Fla. Stat. 812.014(1).

The state presented evidence that the victim's house was broken into, and two safes stolen.  While surveilling a different

13

house (for a different purpose), the police observed Morganti and Redford in possession of the stolen safes, and later found the safes, the victim's firearms, and paperwork containing the victim's name on it in the house shortly after they saw Morganti and Redford bring the safes inside.  See discussion supra Part III.  In Florida, proof of unexplained possession by an accused of property recently stolen by means of a burglary may justify a conviction of burglary in certain cases.  See Fla. Std. Jury Instr. (Crim.) 13.1.  At trial the prosecution also presented evidence of conversations between Morganti and his codefendant where they appeared to discuss different explanations for their possession of the stolen safes and batted about possible trial defenses.  (Id. at 613–15).  Viewing the evidence in the light most favorable to the State, a rational juror could conclude that the codefendants had broken into the victim's home and stolen the safes.

The state court's denial of this claim was not contrary to, and did not involve an unreasonable application of, Jackson or any other clearly established federal law.  Nor was it based upon an unreasonable determination of the facts in light of the evidence presented in state court.  Therefore, in addition to being unexhausted, Ground One is denied on the merits.  28 U.S.C § 2254(B)(2).

**B.    Ground One(a)**

Morganti asserts that Counsel was constitutionally ineffective "for stipulating to inextricable intertwined evidence." (Doc. 1 at 13).[4]  To the extent this is the same fact-intensive claim Morganti raised in his Rule 3.850 Motion, he complains that Counsel stipulated that evidence of a prior burglary (in which Morganti may have been implicated) would not be presented at trial.  Morganti believed he could have presented additional evidence showing that he was <u>not</u> involved in the previous burglary, and thus, he could have impeached one of the state's witnesses.  The postconviction court explained the claim and denied it as follows:

> Defendant asserts that Counsel was ineffective for agreeing, or in the alternative, failing to object to the State's stipulation because it kept out favorable evidence. Defendant asserts that the stipulation kept out evidence of "the stolen IPAD that was recovered from Mr. Cham's home." Defendant asserts that the IPAD would have been favorable to the defense based on the opposite reason why the State wanted to keep this evidence out of trail [sic] and away from the jury. Defendant asserts that the IPAD in question would have gone to the

---

[4] Petitioner does not explain the substance of this claim in his habeas petition. Vague and conclusory statements such as the ones made here do not show how the state courts' adjudication of this claim was contrary to clearly established federal law or based upon an unreasonable determination of the facts. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1061 (11th Cir. 2011) (recognizing that federal courts are not "required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface in his petition.").

credibility of the State's witness, possibly creating reasonable doubt.

On March 19, 2013, the State filed a Motion in Limine seeking to admit evidence of another burglary that occurred one day earlier in Lee County. The Lee County victim's IPAD, along with a safe and two firearms were tracked to 217 Benson Street in Naples later that night. A witness to the Lee County burglary testified that he saw 2 white males get into a red 4 door Saturn and drive away from the crime scene in a suspicious manner. The Defendant and the co-defendant (who was bald) were seen by Det. Doll arriving at 217 Benson Street, Naples, Florida in a red 4 door Saturn the following morning.

The IPAD, 2 guns, 4 passports, and 2 safes from the Lee County burglary were recovered at the Benson Street residence on May 24, 2012. Collier County Sheriff's Det. George Lahm testified that he had interviewed Mr. Cham after they had served the search warrant at the Benson Street residence and Mr. Cham told him that the Defendant and co-defendant had brought the IPAD to his residence some time on May 24, 2012. Investigator Sawyer indicated that the Lee County Sheriff's Office was able to track the IPAD, and the GPS coordinates placed the IPAD at the Benson Street residence on May 23, 2012 at 11:40 p.m.

Defense counsel indicated to the Court that the Lee County case was still under investigation, and he was concerned that if the State mentioned the IPAD from the Lee County burglary it would affect the Defendant's right to remain silent. The Court ruled that unless there was a stipulation, the evidence of the Lee County burglary would not be prejudicial and cited Wright v. State. On August 15, 2013, defense counsel and the State came to an agreement on the stipulation. The State agreed that they would not reference any evidence regarding the Lee County burglary, but if defense counsel chose to get into any portion of it, the State would potentially present all of the evidence from the Lee County burglary. The Court made it clear to defense counsel that they should tread very carefully about opening the door into the Lee County burglary investigation.

On August 22, 2013, the State filed a second Motion in Limine seeking to preclude the Defendant's counsel from

providing evidence or testimony that the State's witnesses, Ashtown Cham and Kristara Corujo, knowingly receive and deal in stolen property. Before the trial began, defense counsel argued that they should be allowed to bring up the other items in the Benson Street residence. The Court granted the State's Motion in Limine and indicated that if Counsel had tried to bring this issue before the jury, they would open the door to the Lee County burglaries. Id.

Defense counsel entered into the stipulation in order to prevent the State from presenting the jury with evidence of the Lee County burglary which would have been more harmful than helpful because it would have shown that the Defendant was stealing safes in Lee and Collier counties and bringing them to Mr. Cham to open them. Mr. Cham's statement that Defendant had brought the IPAD to his residence on May 24, 2012 is consistent with the GPS track that showed it arrived at his residence 20 minutes before midnight on May 24, 2012.

Defendant has failed to demonstrate prejudice pursuant to Strickland. In addition, the Court made it clear to defense counsel, when it granted the State's second Motion in Limine, that it could not offer evidence of other stolen items that were found in possession of Mr. Cham. The Florida Supreme Court has held that counsel cannot be deemed ineffective for failing to admit inadmissible evidence. Owen v. State, 986 So. 2d 534, 546 (Fla. 2008).

(Doc. 7-2 at 1474-76 (citations to the record omitted)). The Second DCA affirmed without a written opinion.

In his reply, Morganti argues that many of the postconviction court's factual findings were incorrect. (Doc. 8 at 5).[5] However, the state courts' factual findings are presumed correct on habeas

---

[5] Specifically, he claims that there was no way he could have brought the stolen IPAD to the Benson Street home (and thus, there was no reason for Counsel to stipulate to its exclusion). (Doc. 8 at 5).

review, and Morganti does not present sufficient clear and convincing evidence to overturn them.

This Court's review of the record supports a conclusion that Counsel was not constitutionally ineffective for stipulating to the exclusion of evidence that could have linked Morganti to another burglary. Therefore, Ground One(a) is without merit.

On March 16, 2013, the trial court held an evidentiary hearing on the state's motion to offer evidence of a Lee County burglary at Morganti's trial as "inextricably intertwined" with the Collier County burglary for which Morganti was tried. (Doc. 7-2 at 18). Counsel for both Morganti and Redford objected "to any admission of the Lee County matters." (Id. at 22). The state explained that it wanted to present evidence of the Lee County burglary to explain why the police were watching the Benson Street house when Morganti and Redford brought the safes there. The prosecutor informed the court that a witness had observed two white males in a red car (similar to Morganti's car) leaving the burgled Lee County home. He then explained.:

> The Lee County burglary. An iPad is stolen. The victim tracks it to the Benson Street address.
>
> Lee County Sheriff's Office asks the Collier County Sherriff's Office to set up surveillance. They get a search warrant. They see a red Saturn, two white males enter the house with a safe. And then they go into the home, and they find what they find. I mean it's more than just an iPad tracking to that residence. There's a connection between the vehicle, the individuals involved.

18

> I mean, they are – this is a textbook case of something
> being inextricably intertwined.

(Doc. 7-2 at 55–56).  Counsel initially stated that he would not
stipulate to an explanation of why the police were watching the
Benson Street house.  (Id. at 52).  But the trial court explained
that Florida case law suggested that "when a defendant refused a
prosecutor's offer to stipulate to facts involved in collateral
crimes, prosecution's evidence of those collateral acts was not
unfairly prejudicial."  (Id. at 56).  The state, and counsel for
both defendants, then stipulated that all the state would say is
that the police were conducting a lawful surveillance of the Benson
Street house.  (Id. at 84–85).  The trial court agreed with the
stipulation, but warned Counsel that "if somehow the defense
voluntarily brought out some items and the State, in rebuttal,
thought they needed to bring forward some evidence . . ."  (Id.
at 91).  Counsel agreed, and noted that he understood that "if we
don't bring it up, it doesn't come up later."  (Id.)

Thereafter, Morganti (not through Counsel) protested the
stipulation, and Counsel told the trial court that Morganti was of
the opinion that "the stipulation should not be made."  (Id. at
94).  Morganti then stated "I just had a different opinion of what
you had.  I'm perfectly – I settled it.  I'm ready to go forward.
I'm happy with your representation."  (Id. at 95).  The court then
swore Morganti and questioned him as follows:

> Q.   Good.  So, Mr. Morganti, the issue that we're here
> about  right  now  is  whether  or  not  there's  an
> agreement that the – there be no testimony from any
> Lee County officers and there be no mention of the
> iPad   concerning   the   Lee   County   case   in   the
> prosecution of your case, Number 12-1158-CFA.
>
> Do you  accept  the  stipulation  and  agreement  that
> has been put forth by the State today?
>
> A.   Yes, sir.

(Id. at 96).  The stipulation precluded the state from connecting
Morganti to another crime.  While under oath, Morganti stated that
he agreed with the stipulation, and "[s]olemn declarations in open
court  carry  a  strong  presumption  of  verity."    Blackledge v.
Allison, 431 U.S. 63, 74 (1977).  Thus, Morganti agreed with the
defense strategy of stipulating that no evidence connecting him or
Redford to a prior burglary be admitted at his trial.

Morganti's current argument that he could have proven that he
was not connected to the earlier burglary is both speculative and
too risky to overcome the propriety of counsel's stipulation.  The
evidence from the Lee County burglary showed—at the minimum—that
the Benson Street house was a place where burglars brought stolen
property.   Even if Morganti could prove that he was not involved
in the Lee County burglary (and assuming that the trial court would
have allowed him to offer evidence to that effect), the fact that
other burglars routinely brought stolen goods to the Benson Street
house identified it as a place where stolen property (such as
safes) would be brought.  In other words, it provided a reason for

Morganti to have brought the safes to that house. Moreover, the trial court cautioned Counsel that if the defense opened the door to specific evidence about the Lee County burglary, other damaging evidence (such as the fact that the physical appearance of Morganti and his co-defendant, as well as their car, matched descriptions given by witnesses to the Lee County burglary). Counsel was not ineffective for stipulating to the exclusion of clearly damaging evidence against his client, and the state courts did not unreasonably conclude that Morganti is not entitled to relief on this claim.

**C.   Ground Two**

Morganti asserts that appellate counsel failed to argue that his case should have been severed from that of his co-defendant Redford under the rule of United Sates v. Bruton, 391 U.S. 123 (1968). (Doc. 1 at 5).[6] Specifically, Morganti's defense was that he did not know where the safes came from, and he assumed they belonged to Redford. Redford claimed that he found the safes in a dumpster. (Id.)

Prior to trial, Counsel moved for severance and separate trials. (Doc. 7-2 at 82). In his motion, Counsel argued that

---

[6] Under Bruton, a defendant's right under the Confrontation Clause is violated when there is a joint trial of co-defendants and the testimonial statement of a co-defendant who does not testify at trial is used to implicate the other co-defendant in the charged crime.

much of the state's evidence implicated Redford, but not Morganti. (Id.)  He argued that Morganti "will be prejudiced by any testimony or evidence which relates only to the defendant Randy Albert Redford."  (Id.)  At a hearing on the motion, Counsel again argued that he should not have to defend his client "on the basis of what Mr. Redford did or did not do in bringing the safes to the house and his association with [other individuals]." (Doc. 7-2 at 105-06).  The state countered that, to the extent Morganti argued that the state's case against him was not very good, it was not an appropriate argument for severance.  (Id. at 107-08, 109).  After confirming that there were no "Bruton-type issues," because neither defendant spoke to the police, the trial court denied Morganti's motion to sever the trials.  (Id. at 109-11).

Although the issue was preserved, appellate counsel did not appeal the trial court's decision not to sever the trials. Thereafter, Morganti filed a state habeas petition alleging ineffective assistance of appellate counsel for failure to raise the severance issue on direct appeal.  (Doc. 7-2 at 964).  In that petition, Morganti asserted that he had advised appellate counsel, Clayton R. Kaeiser, that he (Kaeiser) should appeal the trial court's denial of the motion to sever.  (Id. at 966).  Appellate counsel initially told Plaintiff by written letter that he would look at "sufficiency of the evidence, the jury instructions, and [Morganti's] motion for severance" as the main issues on appeal.

22

(Id. at 974).  But thereafter, Mr. Kaeiser sent Morganti a follow-up letter explaining that he "chose to focus the argument [on appeal] on the two best issues that give [Morganti] a chance of getting out of prison."  (Id. at 975).  This did not include argument on the trial court's denial of Morganti's motion for severance.  The Second DCA denied Morganti's petition alleging ineffective assistance of appellate counsel without a written opinion.  (Id. at 979).

The state court could have reasonably rejected this claim on either Strickland prong.  Morganti attached letters to his state petition from Mr. Kaeiser showing that:  (1) Kaeiser was aware of Morganti's severance issue; but (2) thought it best to focus on the claims that had the best chance of success on appeal—which did not include Morganti's claim that the trial should have been severed.  A criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009)(explaining that appellate counsel is not required to raise every non-frivolous issue).  Rather, an effective appellate attorney "will weed out weaker arguments, even though they may have merit."  Philmore, 575 F.3d at 1264.  Mr. Kaeiser's decision to winnow out the weaker appellate arguments was a

reasonable strategic decision, and he was not constitutionally ineffective for omitting this argument in Morganti's appellate brief.

Moreover, to show prejudice for appellate counsel's failure to raise this claim on appeal, Morganti must show that, had counsel raised this claim, he would have prevailed. Smith v. Robbins, 528 U.S. 259, 285–86 (2000). But this claim had no chance of success on appeal. As argued by Respondent, this is not a situation in which the jury had to consider the out-of-court testimony of a non-testifying co-defendant (a Bruton claim). Morganti's co-defendant testified at their joint trial, and Morganti had the opportunity to cross-examine him when he was on the stand. (Doc. 7-2 at 676–84). Under Florida law, "the fact that the defendant might have a better chance of acquittal or a strategic advantage if tried separately does not establish the right to a severance." McCray v. State, 416 So. 2d 804, 806 (Fla. 1982). "Nor is hostility among defendants, or an attempt by one defendant to escape punishment by throwing the blame on a codefendant, a sufficient reason, by itself, to require severance." Id. Morganti has provided no reasons for the Second DCA to reverse the trial court's decision on this issue, and he has not demonstrated Strickland prejudice from appellate counsel's failure to raise this claim on direct appeal. Morganti is not entitled to federal habeas corpus relief on Ground Two.

24

**D.   Ground Three**

Morganti asserts that Counsel was ineffective based on an actual conflict of interest.  (Doc. 1 at 6).  Specifically, he argues that Counsel refused to challenge the stop and unlawful arrest of Morganti that occurred soon after the police observed Redford bring the safes into the Benson Street house.  (Id. at 6, 13–14).  He contends that "Counsel should have challenged the evidence of the Collier County burglary under the exclusionary sanction.  The evidence of the Collier County crime was discovered well after the stop, detention and arrest and preserved the petitioner's constitutional right to appeal."  (Id. at 14).

Morganti raised this claim in his Rule 3.850 Motion, and the postconviction court denied it on Strickland's prejudice prong. The postconviction court specifically noted that "[Morganti] and [Redford] left the victim's property at the Benson Street residence and law enforcement did not seize any items of evidentiary value" in a search incident to the stop of Morganti and Redford.  (Doc. 7-2 at 1474).  The Second DCA affirmed without a written opinion.

Morganti does not now explain how the state courts got this wrong.  Even if Morganti's arrest was illegal (a finding not made by this Court), he does not identify the evidence he believes would have been suppressed had Counsel challenged it.  To the extent Morganti sought to suppress the safes and their contents, that evidence was not obtained incident to Morganti's arrest.  The

exclusionary rule "has no application" when the state learns of the evidence from an independent source or where "the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint."  Wong Sun v. United States, 371 U.S. 471, 487 (1963) (internal quotation omitted); United States v. Crews, 445 U.S. 463, 471 (1980) (recognizing that the cases that implement the exclusionary rule "begin with the premise that the challenged evidence is in some sense the product of illegal governmental activity").  Counsel recognized that he understood this limitation to the exclusionary rule when he testified during the Rule 3.850 evidentiary hearing that he had discussed a motion to suppress with Morganti:

> But I said to him, what's the motion going to be?  What are we trying to suppress?  He said suppress the stop. And I said well, the suppression comes when the stop results in some evidence that the State would seek to bring forward.  What is that?  He couldn't tell me. It was just the stop was wrong and therefore I want you to make a motion to suppress.  And I said I'm an officer of the court, and I also have a reputation.  I'm not going to submit a motion to the Court that says, Judge we want to suppress and the judge says what do you want to suppress, and I say I don't know.

(Doc. 7-2 at 1387).  Indeed, the record shows that there was no evidence to "suppress" as a result of the allegedly illegal stop,[7]

---

[7] The evidence was recovered from the Benson Street residence, which was legally searched.

and a motion to suppress would not have served any purpose. Counsel is not ineffective for failing to make a futile or meritless motion. See Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (recognizing that defense counsel is not ineffective for failing to raise issues that "clearly lack merit").

Morganti is not entitled to federal habeas corpus relief on Ground Three.

### E.   Ground Four

Morganti asserts that Counsel was ineffective for threatening to withdraw from his case if he took the stand to testify. (Doc. 1 at 7). He asserts that, contrary to Counsel's assumptions, there was no evidence that he (Morganti) intended to testify falsely. (Id. at 15).

Morganti raised this claim in his Rule 3.850 Motion, and the postconviction court rejected it after holding an evidentiary hearing at which both Counsel and Morganti testified. The postconviction court noted that Counsel had testified that he wanted to withdraw from the case because—based upon recorded phone calls between Morganti and Redford—he believed Morganti would lie if he took the stand. (Doc. 7-2 at 1485). Counsel further testified that he had advised Morganti of the consequences if he took the stand to testify and "informed [Morganti] that he would have a conflict if [Morganti] took the stand and was not truthful." The Court specifically found Counsel's testimony credible. (Doc.

27

7-2 at 1486). The postconviction court specifically concluded that Counsel had not told Morganti he would have to "try the case on his own" if he testified.  (Id.)

The state court's credibility determination is a finding of fact, entitled to a presumption of correctness that Morganti must rebut with clear and convincing evidence.  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) ("We consider questions about the credibility and demeanor of a witness to be questions of fact."); 28 U.S.C. § 2254(e)(1) (On habeas review, "[a] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  Morganti has offered nothing—much less clear and convincing evidence—to overcome the presumption of truth given the postconviction court's factual findings and credibility determinations.  A review of the evidentiary hearing transcript supports those findings.  When asked to explain why he had strongly advised Morganti against testifying, Counsel stated:

> Now he's going to take the stand in the trial. I'm saying to him if you're going to take the stand you're going to be faced, first of all, with telling them you've got a felony, and it's really not a great time to do it because [Redford has] just testified and he's admitted to fourteen felonies. So, you guys aren't doing too good in the credibility department. So now if you take the stand and you're going to say pretty much well I – I don't know anything about anything, I'm innocent, is that your defense? Well, that's already a presumption you have. If you're asked on cross examination is what

28

your brother just testified to true, if you say yes,
that's a lie.  If you say no, then you've got a real
problem.  That's what I was saying to him, don't take
that chance.

. . .

I [told Petitioner that I] would seek to withdraw because
I have a conflict.

. . .

And the conflict would be that – that this story out
there, pin the tail on the story, you have to realize
that if you testify then you're going to, one way or the
other, you're not going to be telling the truth in my
estimation.  Therefore, I have a conflict.  And I would
tell the court without saying anything about that, I
believe I have a conflict.  From my experience, the
Court would say I'm not going to – I'm not going to give
a mistrial, but you can ask him a narrative.  That is,
you can get him up there and ask him if he understands
he doesn't have to testify; and if he wants to testify,
he can.  And then you say to him, Mr. Morganti, tell the
jury what's going on here.  And that would be it.

(Doc. 7-2 at 1380, 1382-83 (slight alterations for clarity)).

When asked whether he told Morganti that he would have to try the

case on his own if he withdrew, Counsel answered, "No.  Give me a

break."  (Id. at 1384).  There is support in the record for the

postconviction court's conclusions, and this Court will not

disturb its factual finding that Counsel testified truthfully.

Therefore, Morganti is entitled to habeas relief on Ground Four

only if he can show that Counsel was constitutionally ineffective

for threatening to withdraw under a conflict if Morganti testified

falsely.

A criminal defendant has a constitutional right to testify in his own behalf at his trial.  See Rock v. Arkansas, 483 U.S. 44, 53 (1987).  But this right does not include the right to commit perjury.  See Nix v. Whiteside, 475 U.S. 157, 172 (1987) ("Whatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying *falsely*.") (emphasis in original).  The state courts concluded that Counsel's alleged threat to move to withdraw as counsel if Morganti testified was based upon Counsel's refusal to allow him to offer perjured testimony.  Because Morganti had no right to testify falsely, Counsel's admonition that he would move to withdraw if he did so did not violate Morganti's constitutional rights.  Nix, 475 U.S. at 174 ("When an accused proposes to resort to perjury or to produce false evidence, one consequence is the risk of withdrawal of counsel.").  And, since Counsel did not "breach . . . any recognized professional duty, it follows that there can be no deprivation of the right to assistance of counsel under the Strickland standard."  Id. at 175; see also Nix, 475 at 175 (holding that "as a matter of law, counsel's [refusal to allow perjured testimony] cannot establish the prejudice required for relief under the second strand of the Strickland inquiry.").

The state courts' adjudication of Ground Four was not based upon an unreasonable determination of the facts.  Nor was the adjudication contrary to Strickland, Nix, or any other clearly

established law.  Morganti is not entitled to habeas relief on Ground Four.

### F.   Ground Five

Morganti asserts that Counsel was constitutionally ineffective for failing to object to the trial court reading the principal instruction at his trial.  (Doc. 1 at 15).  He claims that "the State presented no evidence that Morganti acted in concert with the codefendant in committing the burglary and theft. The evidence was insufficient to prove the [principal] instruction beyond a reasonable doubt."  (Id.)

Morganti raised this as part of Ground One(c) in his Rule 3.850 Motion, and the postconviction court denied the claim. (Doc. 7-2 at 1478-79).  The postconviction court noted that the Second DCA has held that "unexplained possession of recently stolen property is not only sufficient to support a theft conviction, but when a burglary necessarily occurs as an adjunct, the inference of guilt from the unexplained possession of the recently stolen good also supports a conviction for burglary."  (Id. at 1477 (quoting Yudin v. State, 117 So. 3d 457, 459-60 (Fla. 2d DCA 2013))).  The postconviction court further noted that evidence was presented that Morganti was in exclusive possession of the safes on May 24, 2012, when he remained in the car with the safes after his co-defendant entered the Benson Street house.  (Id. at 1477).  The court found that Morganti made admissions on the jail phone that

31

he knew the safes were stolen and that Morganti drove his co-defendant to the Benson Street house to open the safes. (Id. at 1477-78). Notably, the postconviction court specifically stated that "[e]ven if defense counsel had objected to the jury instructions, the Court would have overruled those objections because there was sufficient evidence to support them." (Id. at 78). The Second DCA affirmed without a written opinion. Morganti does not explain how he is entitled to relief under section 2254(d), and this Court's review of the record and applicable law supports the state postconviction court's conclusions.

The state court specifically stated that—had Counsel objected the principal jury instruction—he would have been overruled. Therefore, Morganti cannot demonstrate Strickland prejudice from Counsel's failure to make that objection. See Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (recognizing that Callahan could satisfy neither prong of Strickland from counsel's "failure to make a losing objection"). Moreover, Morganti raises this claim as one of ineffective assistance of counsel—not trial court error. Therefore, under Burt v. Titlow's "doubly deferential" standard of review, not only must Morganti show that the "principal" jury instruction did not apply to the facts in this case, but he must also show that no competent counsel could conclude otherwise. 571 U.S. at 15. Petitioner cannot make this showing.

The trial court read the principal instruction to the jury as follows:

> If the defendant helped another person or persons commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did if, number one, the defendant had a conscious intent that the criminal act be done, and number two, the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit the crime.
>
> To be a principal, the defendant does not have to be present when the crime is committed.

(Doc. 7-2 at 783). Not only did the state present evidence showing that the police observed Morganti and Redford in possession of the safes, see discussion supra, Ashton Cham—the resident of the Benson Street house—testified that Redford had come to the house and asked to store some things in his garage. (Id. at 409). Mr. Cham's fiancé testified that Redford told her he needed to "get into" some safes that he owned. (Id. at 418–19). Snippets of three phone calls were played at trial where Morganti and Redford appeared to discuss potential "stories" they could use as defense. (Id. at 613–15). Given the evidence offered by the state showing Morganti's participation in transporting and opening stolen safes, he cannot show that no reasonable competent counsel would have concluded that the principal instruction was appropriate. Counsel was not ineffective for failing to argue otherwise. Morganti is not entitled to federal habeas corpus relief on Ground Five.

### G.    Ground Six

Morganti asserts that Counsel was constitutionally ineffective for failing to call a potential witness. (Doc. 1 at 7). He does not name the witness or explain how he was prejudiced by Counsel's failure to call him. However, in his Rule 3.850 Motion, Morganti alleged that Counsel should have called Joseph Morganti ("Joseph") to testify. (Doc. 7-2 at 1060). The postconviction court summarized and denied the claim as follows:

> Defendant asserts that counsel was ineffective for failing to interview, investigate, and call potential defense witness Joseph Morganti. Defendant asserts that Joseph Morganti would have testified that "the Defendant on May 23, 2012 drove him to Naples to visit his uncle and that they did in fact check into the La Quinta Suites where the Defendant was sleeping when the co-defendant woke the Defendant up for a ride - never saying anything about putting the safe in Defendant's car", thus supporting Defendant's defense.

> The co-defendant took the stand and testified that Joseph Morganti came across the safes in a dumpster at the La Quinta Inn and told the co-defendant what he found. He insisted on telling the people at the hotel about his discovery, but it was the co-defendant who told him not to say anything. After putting the two safes in the car by himself, the codefendant went and woke Defendant up and asked him for a ride to his friend's house. The codefendant testified that Defendant never touched the safes at any time. Therefore, the substance of Joseph Morganti's testimony, that Defendant was present at the La Quinta on May 24, 2012 and was sleeping, was presented by the testimony of the co-defendant.

> In addition, even though Joseph Morganti's testimony would have been duplicative of the co-defendant's testimony, he only would have been able to testify about the events just before the Defendant brought the victim's property to Benson Street residence.

34

> Furthermore, Joseph Morganti's testimony would have conflicted with Defendant's admission that it was him and the co-defendant who found the safes, not Joseph Morganti. Any testimony offered about the Defendant's location on May 23, 2012 would have opened the door for the State to present evidence about the Defendant's involvement in the Lee County burglary and theft of a safe. Counsel's alleged failure to call Joseph Morganti as a witness did not prejudice Defendant pursuant to <u>Strickland</u> and would have been more harmful than helpful.

(Doc. 7-2 at 1478-79).  The Second DCA affirmed the postconviction court without a written opinion.

Morganti does not explain how the state courts' resolution of this claim entitles him to federal habeas corpus relief.  Rather, he merely speculates that Joseph would have testified (and would have testified favorably) had Counsel called him to do so.  But Morganti has not offered sworn testimony from Joseph detailing what he would have said.  That omission, standing alone, defeats this claim.  <u>See</u> <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting <u>Aldrich v. Wainwright</u>, 777 F.2d 630, 636 (11th Cir. 1985)); <u>see also</u> <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony or by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation

35

will not sustain an ineffective assistance claim."); <u>Jones v. State</u>, 845 So. 2d 55, 64 (Fla. 2003) ("Postconviction relief cannot be based on speculative assertions.").

Moreover, as stated by the postconviction court, most of Joseph's purported testimony, or at least the portion that casts Morganti in a favorable light, would have been cumulative to that offered by Redford.  To the extent Morganti asserts that Joseph would have testified that he (Joseph) discovered the safes in a dumpster at La Quinta Inn, that Redford put the safes in the car, and that Morganti did not handle the safes at all, Redford testified to those same facts (<u>see</u> Doc. 7-2 at 667-70), and "[a] petitioner cannot satisfy the prejudice prong of the <u>Strickland</u> test with evidence that is merely cumulative of evidence already presented at trial."  <u>Ledford v. Warden, Ga. Diagnostic and Classification Prison</u>, 818 F.3d 600, 649 (11th Cir. 2016) (internal quotation marks omitted); <u>Van Poyck v. Florida Dep't of Corr.</u>, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative.").

Finally, the postconviction court stated that, had Joseph testified as to Plaintiff's location on May 23, 2012, it would have opened the door to the state offering evidence that Morganti may have been involved in the Lee County burglary.  Counsel cannot

be deemed ineffective for deciding against opening the door to evidence that implicated Morganti in a different crime. See Ledford, 818 F. 3d at 649 (recognizing that Strickland prejudice is not established when the omitted evidence would have opened the door to powerful rebuttal evidence).

Morganti has not met his burden of demonstrating Strickland prejudice, and he is not entitled to federal habeas relief on Ground Six.

### H.   Ground Seven

Morganti asserts that Counsel was ineffective for failing to object when recorded conversations between Morganti and Redford were played during trial. (Doc. 1 at 19). Specifically, Morganti asserts that "[t]he State failed to present evidence that it was the petitioner's voice on the receiving end of the conversations." (Id. at 10). Morganti raised a similar claim in his Rule 3.850 Motion, and the postconviction denied the claim as conclusively refuted by the record because the state actually had presented evidence that the voices on the recording belonged to Morganti and his co-defendant. (Doc. 7-2 at 1484). The Court explained:

> Lieutenant Ganich testified that as a result of the surveillance at the Benson Street residence, law enforcement conducted a traffic stop on Defendant's vehicle shortly after it had left. He testified that during the traffic stop he was able to have a brief conversation with both of the occupants and was familiar with their voices. Lieutenant Ganich was able to identify the Defendant's and co-defendant's voices on three phone calls that were played at trial. Therefore,

> even if defense counsel had objected, the Court would
> have overruled the objections based on <u>Vilsaint [v.
> State</u>, 127 So. 3d 647 (Fla 4th DCA 2013)] and <u>Barrientos
> [v. State</u>, 1 So. 3d 1209 (Fla. 2d DCA 2009)]. Counsel
> cannot be deemed ineffective under <u>Strickland</u> for
> failing to object to, or raising meritless claims.
> <u>Teffeteller v. Duggar</u>, 734 So. 2d 1009, 1024 (Fla. 1999).

(<u>Id.</u> (citations to the record omitted)).  The Second DCA affirmed

without a written opinion.

Before granting habeas relief, this Court would first have to

conclude that the postconviction court misinterpreted state law

when it determined that the defendants' voices on the recordings

had been properly authenticated by Lieutenant Ganich.  However,

it is a "fundamental principle that state courts are the final

arbiters of state law, and federal habeas courts should not second-

guess them on such matters." <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549

(11th Cir. 1997).  Florida's state courts have already answered

the question of what would have happened had Counsel objected to

recordings on the basis that they were not properly authenticated—

the objection would have been overruled.  And in fact, voice

identification is admissible in Florida, and "the credibility of

the identification is a question for the jury." <u>Vilsaint v. State</u>,

127 So. 3d 647, 650 (Fla 4th DCA 2013); <u>Barrientos v. State</u>, 1 So.

3d 1209, 1213 (Fla. 2d DCA 2009) ("[The law enforcement officer's]

testimony was admissible to prove the identity of the person that

he heard speaking with the informant by means of the wire.").

Finally, Morganti has not presented evidence (or even

alleged) that the voices on the recordings were <u>not</u> those of Morganti and Redford.  "<u>Strickland</u> places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different" had Counsel performed as Morganti now argues he should have.  <u>Wong v. Belmontes</u>, 558 U.S. 15, 27 (2009) (quoting <u>Strickland</u>, 466 U.S. at 694).  In other words, it is Morganti's burden on habeas review to show that the recordings were improperly admitted.  <u>Tejada v. Duggar</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  Morganti has not met this burden, and he is not entitled to federal habeas relief on Ground Seven.

   **I.  Ground Eight**

   In Ground Eight, Morganti asserts a claim of cumulative error. (Doc. 1 at 20).  To the extent Morganti raises this as an ineffective assistance claim, he has not established prejudice as to any individual claim or the collective effect of any deficient performance on the trial.  <u>See Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative error since "none of [Petitioner's] individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate").  Also, absent Supreme Court precedent applying the cumulative error doctrine to federal habeas corpus claims, Morganti cannot show entitlement to relief on a cumulative error

claim under 28 U.S.C. § 2254(d)(1).  See Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009).  Therefore, Morganti is not entitled to federal habeas relief on Ground Eight.

## IV.   Conclusion

Based on the foregoing, Morganti is not entitled to relief on the habeas claims presented here.

Accordingly, it is ordered that:

1.    The amended 28 U.S.C. § 2254 petition filed by Pasquale J. Morganti is **DENIED**.  Ground One is dismissed as unexhausted and alternatively, denied on the merits. The remaining claims are denied on the merits.

2.    The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Petitioner, deny any pending motions as moot, terminate any deadlines, and close this case.

## Certificate of Appealability[8]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court or circuit justice or judge must first issue a certificate of appealability

---

[8] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

(COA).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  When, as here, the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

Upon consideration of the record, the Court declines to issue a COA.  Because Petitioner is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida on February 14, 2023.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


SA:  FTMP-2

Copies to:    Pasquale J. Morganti, Counsel of Record

41